UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Henry Paul Paza Iza, *by his next friend*, Martha C. Iza,<br><br>Petitioner,<br><br>-v-<br><br>Anthony J. Larocco, *in his official capacity as Sheriff of Nassau County*; William Joyce, *in his official capacity as District Director of New York for U.S. Immigration and Customs Enforcement (ICE)*; Kristi Noem, *in her official capacity as Secretary of the Department of Homeland Security*; Pamela Bondi, *in her official capacity as United States Attorney General*,<br><br>Respondents. | 2:25-cv-6915<br>(NJC) |

**OPINION AND TEMPORARY RESTRAINING ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On December 16, 2025, Martha C. Iza ("Ms. Iza") filed an emergency petition for a writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2241, as next friend to Henry Paul Paza Iza ("Mr. Iza"). Proceeding pro se, Ms. Iza is challenging the lawfulness of Mr. Iza's detention by Immigration and Customs Enforcement ("ICE") and seeking a writ of habeas corpus ordering Respondents to "release [Mr. Iza] on his own recognizance or under parole, a low bond or reasonable conditions of supervision." (Pet. For Writ of Habeas Corpus ("Pet."), ECF No. 1 at 8.) Ms. Iza also seeks Order from the Court "directing Respondents to show cause why the writ should not be granted within 7–15 days to safeguard [Mr. Iza's] Procedural Due Process rights." (Pet. at 8.) Because Ms. Iza is seeking emergency and time-sensitive relief, the Court construes the Petition as seeking a temporary restraining order ("TRO Motion") to enjoin Respondents

from continuing to detain Mr. Iza under potentially unlawful grounds, in addition to seeking a writ of habeas corpus.[1]

Respondents are government officials: Anthony J. LaRocco, Nassau County Sheriff; William Joyce, Deputy Field Office Director in the New York City ICE Field Office; Kristi Noem, the Secretary of the Department of Homeland Security ("DHS"); and Attorney General Pamela Bondi. Joyce, Noem, and Bondi are collectively referred to as the "Respondents."[2]

On December 22, 2025, the Court held a teleconference on Ms. Iza's TRO Motion. For the reasons stated on the record and set forth below, the Court grants the TRO Motion and orders the following relief: **ICE must immediately release Henry Paul Paza Iza from detention and may not re-detain him under 8 U.S.C. § 1225(b)(2). Pursuant to Rule 65 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), this Order will remain in effect for the next fourteen (14) days, until January 5, 2026.**

## BACKGROUND

The following facts are taken from Ms. Iza's Petition (ECF No. 1); Respondents' December 17, 2025 Letter to the Court (ECF No. 4 ("Dec. 17 Letter")); Respondents' December

---

[1] It is well-established that "Courts should liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *Diaz v. Kopp*, 146 F.4th 301, 305 (2d Cir. 2025). In this case, Ms. Iza's request for urgent relief indicates that she is seeking a temporary restraining order. Moreover, at the December 22, 2025 conference in this matter, counsel for Respondents confirmed that Respondents also understand the Petition to also seek temporary relief pending a final adjudication of the request for a writ of habeas corpus.

[2] LaRocco has not entered an appearance in this action or responded to the Court's Order to Show Cause. However, because Mr. Iza is no longer detained in the Nassau County Correctional Center, it is unclear whether LaRocco remains a proper respondent on the Petition.

2

19, 2025 response to the Court's Order to Show Cause (ECF No. 6 ("Dec. 19 Letter ")); and Respondents' December 22, 2025 Letter to the Court (ECF No. 7 ("Dec. 22 Letter")).

Mr. Iza is an Ecuadorian national who entered the United States on or around December 6, 2022, near El Paso, Texas. (Pet. at 2, 13; Dec. 19 Letter at 1.) Mr. Iza was arrested by Customs and Border Protection ("CBP") officers and transported to a nearby facility for processing. (Dec. 19 Letter at 1–2.) On February 7, 2023, Mr. Iza was issued a Form I-94 and was released on parole as an alternative to continued detention. (*Id*; Form I-94, ECF No. 7-2.) On November 20, 2023, Mr. Iza—then living in New York—filed an affirmative application for asylum, withholding of removal, and relief under the Convention Against Torture. (Pet. at 2, 22.)

On the morning of December 14, 2025, ICE agents detained Mr. Iza in or near the parking lot of the Home Depot located at 92-30 168th Street, Jamaica, New York ("Home Depot"). (Pet. at 1.) Mr. Iza was transported to Central Islip Processing center in Central Islip, New York, where he was served with a Form I-200, Warrant for Arrest. (Dec. 19 Letter at 2.) Later that day, Mr. Iza was transported to the Nassau County Correctional Facility. (*Id*.)

On December 16, 2025, ICE served Mr. Iza with a Notice to Appear ("NTA"), Form I-862, and charged him as inadmissible pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without parole, or a noncitizen who arrived in the United States at a place or time other than as designated by the Attorney General. (*Id*.) The NTA further ordered Mr. Iza to appear in Immigration Court on January 2, 2026. (*Id*. at Exhibit 2.)

On December 17, 2025, Mr. Iza was transferred from Nassau County Correctional Center to a hold room in 26 Federal Plaza, New York, New York, before subsequently being transferred to the ICE Contract Detention Facility in Elizabeth, New Jersey, later that day. (*Id*.)

3

In the Petition, Ms. Iza's argues that Mr. Iza's detention violates his Fifth Amendment right to procedural due process because he was stopped and detained by ICE in the parking lot of the Home Depot at 92-30 168th Street in Jamaica, New York without any "notice, an opportunity to respond, or an individualized determination that he posed a flight risk or danger to the community" before he was detained. (Pet. at 2). Ms. Iza also contends that Mr. Iza's procedural due process rights were violated because he is being denied access to contact counsel. (*Id*.) Ms. Iza also contends that Mr. Iza's detention violates his rights to substantive due process. (*Id*. at 7.)

## PROCEDURAL HISTORY

On December 16, 2025, Mr. Iza's mother, Ms. Martha C. Iza, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 as Mr. Iza's next friend. (ECF No. 1). Later that day, on December 16, 2025, the Court issued an Order to Show Cause requiring Respondents to show why the petition for a writ of habeas corpus should not be granted. (ECF No. 3.) The Court issued an additional Order requiring Respondents to file a letter on the Court's docket confirming where Mr. Iza was being detained and that he had not been transferred out of this Court's jurisdiction in violation of the plain terms of the Order to Show Cause. (Elec. Order, Dec. 16, 2025.) On December 17, 2025, Respondents filed a letter confirming that, as of the date and time of that submission, Mr. Iza was being detained in the Nassau County Correctional Center in East Meadow, New York. (ECF No. 4.)

On December 19, 2025, Respondents filed a Response to the Court's Order to Show Cause (ECF No. 6), in which they reported that on December 17, 2025, Petitioner was transferred to a hold room at 26 Federal Plaza, New York, New York, and then subsequently transferred to an ICE facility in Elizabeth, New Jersey. (*Id*.) Additionally, Respondents' December 19, 2025 letter stated that:

4

> in lieu of a formal responsive memorandum to conserve judicial and party resources and to expedite the Court's consideration of this case, in light of the Court's decision on the principal legal issues in Rodriguez-Acurio v. Almodovar, No. 25-cv-6065, 2025 WL 3314430 (E.D.N.Y., Nov.28, 2025).

*Id.*

On that basis, Respondents "acknowledge[d] that the Court's decision [in *Rodriguez-Acurio*] would control the results in this case" because the facts concerning the detention of Rodriguez-Acurio and Mr. Iza are "materially indistinguishable." (Dec. 19 Letter at 2.) As a result, Respondents "incorporate[d] by reference the legal arguments [they] presented in Rodriguez-Acurio and respectfully submit[ted] that the Court can decide this matter without further briefing." (*Id.*)

On December 20, 2025, the Court filed an additional Order noting that the Response to the Court's Order to Show Cause failed to identify the specific statutory basis for Mr. Iza's detention: 8 U.S.C. § 1225(b)(1); 8 U.S.C. § 1225(b)(2); 8 U.S.C. § 1226(c); and/or some other provision of the Immigration and Nationality Act. (Elec. Order, Dec. 20, 2025.) Nor did the Response confirm that all documents material to Respondents' asserted statutory basis for detaining Mr. Iza had been included in the December 19, 2025 submission. (*Id.*) The Court ordered Respondents to file a supplemental submission by Monday, December 22, 2025 at 11:00 am identifying the specific provisions of the Immigration and Nationality Act asserted as the basis for Mr. Iza's detention, and all documents from the Department of Homeland Security ("DHS") and United States Citizenship and Immigration Services ("USCIS") demonstrating why such a statutory basis applies. (*Id.*)

On Monday, December 22, 2025, Respondents filed a letter stating that Mr. Iza is detained pursuant to Section 1225(b)(2) (Dec. 22 Letter), along with the following: (1) a Declaration from Mincheol So, a Deportation Officer with ICE (ECF No. 7-1, Exhibit A); (2)

5

Mr. Iza's Form I-94 (ECF No. 7-2, Exhibit B); (3) Mr. Iza's Form I-830 (ECF No. 7-3, Exhibit C); (4) Mr. Iza's Form I-213 (ECF No. 7-4, Exhibit D); (5) Mr. Iza's Form I-385 (ECF No. 7-5, Exhibit E); and (6) Mr. Iza's Form G-56 (ECF No. 7-5, Exhibit F).

On December 22, 2025, the Court scheduled a telephone conference for 3:30 PM that same day. (Elec. Order, Dec. 22, 2025.) During the conference, and for reasons set forth on the record and explained in detail below, the Court granted the TRO Motion.

## LEGAL STANDARD

The Second Circuit has established that a party seeking a temporary restraining order must show three things: (1) irreparable harm in the absence of an injunction pending resolution of the action; (2) either a likelihood of success on the merits OR both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that the emergency relief is in the public interest. *See National American Soccer League, LLC v. U.S. Soccer Federation*, 883 F.3d 32, 37 (2d Cir. 2018); *see also Fed. Defs. of New York, Inc. on behalf of Metro. Det. Ctr. - Brooklyn v. Fed. Bureau of Prisons*, 416 F. Supp. 3d 249, 251 (E.D.N.Y. 2019) ("The standards for a preliminary injunction and temporary restraining order are identical.").

A prohibitory temporary restraining order "typically requires the non-movant to refrain from taking some action" to preserve the status quo ante—"that is, the last actual, peaceable[,] uncontested status which preceded the pending controversy." *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 365 (2d Cir. 2024). By contrast, a mandatory temporary restraining order requires the non-movant to take some action to alter the status quo ante. *Id*. When seeking a mandatory temporary restraining order, "the likelihood-of-success and irreparable-harm requirements become more demanding still, requiring that the plaintiff show a

6

*clear or substantial* likelihood of success on the merits and make a *strong showing* of irreparable harm." *Id*. (citing *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)) (emphasis in original).

Here, the last actual, peaceable, uncontested status that preceded the dispute between the parties was immediately prior to ICE's arrest of Mr. Iza in or near a Home Depot parking lot on December 14, 2025. Accordingly, the TRO Motion requests temporary relief in the form of an injunction ordering Mr. Iza's release from ICE custody, which would require the issuance of a prohibitory injunction requiring Respondents to release Mr. Iza from ICE detention. Accordingly, to prevail on the Petition, Mr. Iza most demonstrate: (1) irreparable harm in the absence of an injunction pending resolution of the action; (2) either a likelihood of success on the merits OR both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that the emergency relief is in the public interest. Nevertheless, even should the higher standard apply it is met; there is a clear or substantial likelihood of success on the merits and a strong showing of irreparable harm.

## DISCUSSION

Ms. Iza seeks a temporary restraining order enjoining Respondents from continuing to detain Mr. Iza under circumstances that Ms. Iza argues violate his procedural due process rights under the Fifth Amendment. (Pet. at 7.) For the reasons set forth below, Ms. Iza has demonstrated a clear likelihood of success on the merits of her claim, a strong showing that Mr. Iza will experience irreparable harm if he remains detained, and that the public interest weighs in favor of granting the requested temporary restraining order.

**I.        Likelihood of Success on the Merits**

Ms. Iza has made a clear showing that she is likely to succeed on the merits of her claim that Mr. Iza's detention violated his procedural due process rights under the Fifth Amendment when he was detained by ICE in the parking lot of Home Depot without "any notice, an opportunity to respond, or an individualized determination that he posed a flight risk or danger to the community" before he was detained. (Pet. at 2.)

Ms. Iza has shown that she is likely to succeed—and even that she is *clearly* likely to succeed on the merits—of her claim that Respondents violated Mr. Iza's Fifth Amendment rights by detaining him under 8 U.S.C. § 1226(a)(2) ("Section 1226(a)"). (Pet. ¶ 7.) Under Section 1226(a), a DHS officer must make an individualized determination that Mr. Iza is a danger to the community or poses a flight risk *before* detaining him. *Rodriguez-Acurio v. Almodovar*, 2025 WL 3314420, at *28 (E.D.N.Y. Nov. 28, 2025) ("Moreover, the regulations implementing Section 1226(a) delegate to DHS officers the authority to grant bond or conditional parole, and pursuant to such authority, *a DHS officer must make an individualized determination as to whether detention is appropriate* based on two factors—whether the noncitizen is (1) a 'danger to property or persons' and (2) is 'likely to appear for any future proceeding.'" (citing 8 C.F.R. § 1236.1(c)(8)) (emphasis added).

Respondents argue that the proper statutory basis for Mr. Iza's detention is 8 U.S.C. 1225(b)(2)(A) ("Section 1225(b)"). (Dec. 22 Letter at 1.) For the reasons that follow, Ms. Iza is likely to show that Mr. Iza is detained under Section 1226a.

### a. Section 1225(b)

Section 1225(b)(2) provides that:

> in the case of an alien who is an **applicant for admission**, if the examining immigration officer determines that an **alien seeking admission** is **not clearly and beyond a doubt entitled to be admitted**, the alien shall be detained for a

8

proceeding under section 1229a.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). As this Court previously set out in *Rodriguez-Acurio*, according to its plain text, to be subject to mandatory detention under this statute, the noncitizen must be: (1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted. *Rodriguez-Acurio*, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025). There is no dispute that Mr. Iza is an applicant for admission" and he is "not clearly and beyond a doubt entitled to be admitted" as set forth in Section 1225(b).

In *Rodriguez-Acurio*, Respondents argued that because the petitioner in that case was an "applicant for admission," she was also inherently and necessarily seeking admission and thereby satisfied all three criteria required for mandatory detention under 1225(b)(2). 2025 WL 3314420, at *22–*23 (E.D.N.Y. Nov. 28, 2025). In the December 19, 2025 letter, Respondents put forth the same argument with respect to Mr. Iza. (Dec. 19 Letter at 2.) Based on the current record, there is a clear likelihood of success on the claim that Mr. Iza is not detained under 8 U.S.C. § 1225(b)(2) for the reasons set out in *Rodriguez-Acurio*, 2025 WL 3314420, at *22–*24.

As set forth in 8 U.S.C. § 1225(a)(1), an "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States." And admission is defined as "the lawful entry of the alien into the United States after inspection and authorization by the immigration officer." 8 U.S.C. § 1101(a)(13)(A). As explained in *Rodriguez-Acurio*, as a result, "[t]he term 'applicant for admission' is . . . something of a misnomer. It doesn't require an application of any sort. All that's needed is presence without admission—in other words, it applies to the great number of undocumented immigrants who currently live in this country." *Rodriguez-Acurio*, 2025 WL 3314420, at *10 (quoting *Huamani*

9

*v. Francis*, No. 25-cv-8110, 2025 WL 3079014, at *3 (S.D.N.Y. Nov. 4, 2025)). By contrast, the term, "'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering." *Id*. at *22.

Mr. Iza is not seeking admission because he has been living in the United States since December 2022. Respondents do not identify any active process of seeking admission attributable to Mr. Iza. (*See generally* Dec. 17 Letter, Dec. 19 Letter, Dec. 22 Letter) Respondents note that they "respectfully disagree[] with the Court's decision in *Rodriguez-Acurio*" but do not advance any additional arguments other than what they previously set forth in *Rodriguez-Acurio* and incorporated by reference in the December 19, 2025 letter response to the Petition in this action. (Dec. 19 Letter at 2.) Respondents' arguments are unpersuasive for the reasons already set forth in *Rodriguez-Acurio*.

As this Court explained in *Rodriguez-Acurio*, an "overwhelming, lopsided majority" of district courts have rejected Respondents' argument concerning Section 1225(b)(2). 2025 WL 3314420, at *23 (quoting *Barco Mercado v. Francis*, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025)). Indeed, Respondents' position that all noncitizens who have come into the United States without authorization, but have been living in the United States must be detained "has been challenged in at least 362 cases in federal district courts" and the challengers "have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States." *Rodriguez-Acurio*, 2025 WL 3314420, at *23 (quoting *Barco Mercado v. Francis*, 2025 WL 3295903, at *4). Such decisions are not binding, and the Court has independently considered Respondents' arguments. Nonetheless, they reflect the novelty of Respondents' arguments and demonstrate "that the law still means what it always has meant." *Id.*

Accordingly, Mr. Iza was detained while present in the United States but not while actively seeking admission into the United States. Therefore, Respondents' detention of him, which commenced on December 14, 2025, is not carried out pursuant to Section 1225(b)(2).

### b. Section 1226(a)

"Sections 1225 and 1226 are "mutually exclusive—a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226." *Rodriguez-Acurio*, 2025 WL 3314420, at *24. Ms. Iza argues that Mr. Iza is detained under Section 1226(a). (Pet. ¶ 7.) Respondents acknowledge Ms. Iza's position but do not contest it in any way, other than referencing its positions in *Rodriguez-Acurio*. (Dec. 19 Letter at 2). However, as explained above, Mr. Iza is not being detained under Section 1225(b)(2). Accordingly, this Court finds that Mr. Iza's detention is governed by Section 1226(a).

As other courts have held, Section 1226(a) governs the detention of noncitizens who are arrested on a warrant while present in the United States. *Sampiao v. Hyde*, No. 25-CV-11981, 2025 WL 2607924, at *8 (D. Mass. Sept. 9, 2025). The conclusion that Mr. Iza's detention is governed by Section 1226(a) is supported by the fact that Mr. Iza was arrested on a U.S. Department of Homeland Security Warrant for Arrest that was issued pursuant to Section 1226(a). (Form I-200, Warrant for Arrest ("Warrant"), ECF No. 6-1.) The face of the warrant states that the immigration officer who issued the warrant did so "pursuant to sections 236 and 287 of the Immigration and Nationality Act" and part 287 of the title 8 of the Code of Federal Regulations. (*Id.*); *see Rodriguez-Acurio*, 2025 WL 3314420, at *24 (finding that Sections 236 and 287 of the Immigration and National Act and part 287 of title 8 of the Code of Federal Regulations correspond to 8 U.S.C. §§ 1226, 1357 and 8 C.F.R. 287.1–287.12.); *see also Lopez Benite v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025) (finding that Petitioner's Notice of

11

Custody Determination and warrants for arrest, all pursuant to 1226, "unequivocally establish[ed]" that he was detained pursuant to Section 1226).

Thus, based on the current record, Mr. Iza's detention is governed by Section 1226(a). Section 1226(a) provides that, "pending a decision on whether [an] alien is to be removed from the United States," the Attorney General "may . . . detain" the noncitizen or "may release" the noncitizen on "bond" or "conditional parole." 8 U.S.C. § 1226(a). The regulations implementing § 1226(a) delegate to DHS officers the authority make an individualized bond determination. *Lopez Benitez*, 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025 (citing 8 C.F.R. § 1236.1(c)(8)). The broader statutory and regulatory scheme provides for an opportunity to appeal a detention decision by DHS to an immigration judge who then conducts their own assessment of the noncitizens' flight risk and dangerousness, among other factors." *See Lopez Benitez*, 795 F. Supp. 3d at 493 (citing 8 C.F.R. § 1003.19(d)). Accordingly, noncitizens detained are not subject to mandatory detention and are afforded opportunities to present and appeal their detention.

    c. **Procedural Due Process**

The Due Process Clause of the Fifth Amendment "covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). In *Rodriguez-Acurio*, Respondents cited several cases, including *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 107 (2020), to argue that the petitioner in that case did not have a right to any additional process than what the Section 1225 mandatory detention scheme affords. Respondents' December 19, 2025 letter incorporates by reference the arguments made by respondents in *Rodriguez-Acurio* (Dec. 19 Letter at 2), which I understand to mean that Respondents make that same argument in the present action.

12

However, as I found in *Rodriguez-Acurio*, Respondents' argument misstates the law. *See Rodriguez-Acurio*, 2025 WL 3314420, at *25–*27. Section 1226(a) vests DHS with "broad authority to arrest and detain noncitizens, but due process must account for the wide discretion that Section 1226(a) vests in the Government to arrest any person in the United States suspected of being removable." *See Lopez Benitez*, 795 F. Supp. 3d at 492. The Second Circuit applies the *Mathews v. Eldridge*, 424 U.S. 319 (1976), balancing test "when determining the adequacy of process in the context of civil immigration confinement." *Munoz Materano v. Artera*, No. 25-cv-6137, 2025 WL 2630826, at *12 (S.D.N.Y., Sept. 12, 2025). Under that test, determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. *Mathews*, 424 U.S. at 335.

Applying that test, Mr. Iza's Fifth Amendment Procedural Due Process rights have been violated.

### i. Private Interest

On Mr. Iza's behalf, Ms. Iza invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). As a result, Mr. Iza's private interest in his liberty is significant. The weight of this interest is underscored by the fact that although Mr. Iza was served with a Notice to Appear on December 16, 2025—just two days after he was detained by ICE—he has been in living in the United States since 2022. (Pet. at 2.) Further, Mr. Iza's next hearing before an immigration judge

13

is scheduled for January 2, 2026. Mr. Iza has a significant private interest in being free from imprisonment while his removal proceedings are pending. (Form I-862, ECF No. 6-2).

### ii.     Risk of Erroneous Deprivation

There is also a high risk of erroneous deprivation through the procedures used here. Respondents provided Mr. Iza no notice or opportunity to be heard prior to detaining him on December 14, 2025. There is a high risk of erroneous deprivation of liberty in detaining Mr. Iza without any notice or opportunity to be heard.

### iii.    Government's Interest

The Attorney General may have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community. *See Lopez Benitez*, 795 F. Supp. 3d at 496. However, there is nothing in the record suggesting that Mr. Iza is a flight risk or a danger to his community. By contrast, shortly after Mr. Iza's entry into the United States on or around December 6, 2022, Respondents released Mr. Iza on parole, permitting him to move to the interior of the United States.

Here, considering all three of the *Mathews v. Eldridge* factors, leads to the conclusion that Respondents' ongoing detention of Mr. Iza without notice and an opportunity to be heard violates his due process rights. Accordingly, Ms. Iza has shown a strong likelihood of success on the merits of her claim.

### iv.    Irreparable Harm

Ms. Iza has made a strong showing that Mr. Iza will suffer irreparable harm absent a temporary restraining order. "[T]here is no question that detention causes irreparable harm: indeed, every minute that someone is unlawfully denied freedom results in an injury that really can never be remedied." *Alvarez Ortiz v. Freden*, 2025 WL 3085032, at *11 (W.D.N.Y. Nov. 4,

14

2025). Moreover, because Ms. Iza has asserted that Mr. Iza's constitutional rights are being violated, a presumption of irreparable harm attaches. *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996); *see also Connecticut Dep't of Env't Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) (holding that "violations of constitutional rights are presumed irreparable.") (citation omitted).

### v.    Emergency Relief is in the Public Interest

Freedom from unlawful detention is undoubtedly within the public's interest. Accordingly, Ms. Iza has sufficiently demonstrated issuing a temporary restraining order to enjoin what is more than likely the unlawful detention of Mr. Iza is in the public's interest.

### vi.    Issuance of a Temporary Restraining Order

Here, Ms. Iza has demonstrated a clear likelihood of success on the merits and a strong showing that Mr. Iza will be irreparably harmed absent a temporary restraining order, and that granting Mr. Iza a temporary restraining order is in the public's interest.

Accordingly, it is hereby ORDERED that ICE must immediately release Henry Paul Paza Iza from detention, effective immediately, and shall not redetain Mr. Iza under Section 1225(b)(2). Pursuant to Rule 65 of the Federal Rules of Civil Procedure, and this Order will remain in effect for the next fourteen (14) days, until January 5, 2026.

Dated: Central Islip, New York
        December 22, 2025

                                               */s/ Nusrat J. Choudhury*
                                               NUSRAT J. CHOUDHURY
                                               United States District Judge