## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Henry Paul Paza Iza, *by his next friend*, Martha C. Iza,<br><br>Petitioner,<br><br>-v-<br><br>Anthony J. Larocco, *in his official capacity as Sheriff of Nassau County*; William Joyce, *in his official capacity as District Director of New York for U.S. Immigration and Customs Enforcement (ICE)*; Kristi Noem, *in her official capacity as Secretary of the Department of Homeland Security*; Pamela Bondi, *in her official capacity as United States Attorney General*,<br><br>Respondents. | 2:25-cv-6915<br>(NJC) |

## OPINION AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

On December 16, 2025, Martha C. Iza ("Ms. Iza"), proceeding pro se, filed an emergency petition for a writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2241, as next friend to her son, Henry Paul Paza Iza ("Mr. Iza") challenging the legality of Mr. Iza's detention by Immigration and Customs Enforcement ("ICE"), arguing that ICE detained Mr. Iza in violation of Section 236(a) of the Immigration and National Act ("INA") 8 U.S.C. § 1226(a) ("Section 1226"), the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, and the Administrative Procedures Act, 5 U.S.C. §§ 551 et seq. The Petition seeks a writ of habeas corpus immediately releasing Mr. Iza on his own recognizance or under parole, a low bond or reasonable conditions of supervision. (Pet. For Writ of Habeas Corpus ("Pet."), ECF No. 1 at 8.) It also seeks an order "directing Respondents to show cause why the writ should not be granted within 7–15 days to safeguard [Mr. Iza's] Procedural Due Process rights," among other relief.

(Pet. at 8.) Because the Petition seeks emergency and time-sensitive relief, the Court broadly construes it to seek a temporary restraining order ("TRO Motion") to enjoin Respondents from continuing to detain Mr. Iza under potentially unlawful grounds, in addition to seeking a writ of habeas corpus.[1]

The Respondents are: Anthony J. LaRocco, Nassau County Sheriff; William Joyce, Deputy Field Office Director in the U.S. Customs and Immigration Enforcement ("ICE") Field Office for New York City; Kristi Noem, the Secretary of the U.S. Department of Homeland Security ("DHS"); and Attorney General Pamela Bondi. Joyce, Noem, and Bondi are collectively referred to as the "Respondents."[2] Respondents argue that Mr. Iza's detention is governed by 8 U.S.C. § 1225(b), and that this statute requires his detention. Respondents make no arguments specific to Mr. Iza but instead rely entirely on the arguments they made in a different case: *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025). Respondents invoke 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"), which governs the mandatory detention of certain noncitizens who are "seeking admission" to

---

[1] It is well-established that "Courts should liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *Diaz v. Kopp*, 146 F.4th 301, 305 (2d Cir. 2025). In this case, the Petition's request for urgent relief conveys a request for a temporary restraining order. At the December 22, 2025 conference in this matter, counsel for Respondents confirmed that Respondents also understand the Petition to also seek temporary relief pending a final adjudication of the request for a writ of habeas corpus. (*See* ECF No. 11, Dec. 22, 2025 Hr'g Tr. at 6:9–12 (Respondents confirming they understand the Petition to include a request for a temporary restraining order).)

[2] LaRocco has not entered an appearance in this action or responded to the Court's December 16, 2025 Order to Show Cause (ECF No. 3). As addressed below, Mr. Iza is no longer detained in the Nassau County Correctional Center, and the Parties do not suggest that his lack of appearance precludes a grant of the requested relief as to the Respondents.

the United States. They argue that Mr. Iza's detention is supported by that statute and that he has no right to additional process under the Due Process Clause.

Following the Court's issuance of an Order to Show Cause (ECF No. 3), Respondents submitted a written response to the Petition on December 19, 2025. ("Dec. 19 Letter," ECF No. 6). On December 22, 2025, the Court held a teleconference on the TRO Motion. For the reasons stated on the record and set forth in the written Order ("TRO Order," ECF No. 8), the Court granted the TRO Motion, ordered ICE to immediately release Mr. Iza from detention, and prohibited ICE from re-detaining him under Section 1225(b)(2) for the duration of the TRO, which was set to expire fourteen days later on January 5, 2025, pursuant to Rule 65, Fed. R. Civ. P. (TRO Order at 15.) Respondents released Mr. Iza from ICE detention later that evening. (ECF No. 9.)

At this time, the Court considers the merits of the Petition, which remains pending despite Mr. Iza's temporary release. Shortly after Mr. Iza arrived in the United States in 2022, ICE paroled him into the country under 8 U.S.C. § 1182(d)(5)(A) ("Section 1182(d)(5)(A)"), which permits noncitizens to be paroled "into the United States" for urgent humanitarian or significant public benefit purposes. With that authorization, Mr. Iza lawfully moved to New York. He resided continuously in the United States for more than three years, applied for asylum, was granted a five-year work authorization by United States Citizenship and Immigration Services ("USCIS") starting in June 2024, worked as an electrician, and was scheduled to appear for a USCIS interview in 2029. He has never been charged or even convicted of any crime in this country. However, Mr. Iza was unexpectedly arrested and detained by ICE in or near the parking lot of a Home Depot in Jamaica, New York.

A textual analysis of Section 1225(b) compels the conclusion that none of the provisions of that statute authorizing the mandatory detention of noncitizens apply to Mr. Iza. Neither at the time of his arrest, nor at any point thereafter, was he subject to mandatory detention under Section 1225(b)(2) as a noncitizen who, among other things, was "seeking admission" to the United States. Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) ("Section 1225(b)(1)"), the brevity of their legal briefs and factual submissions in this matter and their incorporation by reference of all arguments raised in *Rodriguez-Acurio* leads this Court to consider whether this mandatory detention provision applies to Mr. Iza. However, based on the text of Section 1225(b)(1), it does not. Neither at the time of his arrest, nor at any point thereafter, was Mr. Iza subject to mandatory detention pending expedited removal, whether as an "arriving alien" under 8 U.C.C. § 1225(b)(1)(A)(i) or as a noncitizen designated for such treatment under 8 U.S.C. § 1225(b)(1)(A)(iii).

Moreover, Mr. Iza's parole into the United States in 2022 under Section 1182(d)(5)(A) was premised by law on a determination that he did not pose a safety risk. Nothing in the record before this Court shows any change in circumstances. No one at DHS or ICE ever made any individualized determination that Mr. Iza poses a flight or public safety risk before he was suddenly arrested and detained on December 14, 2025. Mr. Iza's detention is a clear infringement of his significant liberty interest in being free from imprisonment—the quintessential interest triggering the procedural due process protections of the Fifth Amendment, the hallmark of which is the requirement to provide notice and an opportunity to be heard. In light of Mr. Iza's significant interest in physical liberty, even as a noncitizen subject to discretionary detention under Section 1226(a), the high risk of erroneous deprivation resulting from his detention without any notice or opportunity to be heard, and the government's failure to

4

show that detention is needed to protect public safety or guard against any risk of flight, Respondents' detention of Mr. Iza without providing any notice or opportunity to be heard before a DHS officer or immigration judge is a violation of his right to procedural due process.

Accordingly, for the reasons explained below and in *Rodriguez-Acurio*, which is incorporated by reference in this Opinion and Order, Respondents detained Mr. Iza under Section 1226(a) and did so in violation of his Fifth Amendment rights to procedural due process. The Petition is therefore granted in part and Respondents are prohibited from detaining Mr. Iza and denying him bond in any subsequent proceeding on the basis that he must be detained under 8 U.S.C. § 1225(b)(2), absent a change in relevant circumstances consistent with this Opinion and Order. The Court does not resolve the Petition's request for attorney's fees and costs at this time but permits Mr. Iza to file an application for attorney's fees and costs by February 2, 2026.

## FACTUAL FINDINGS

### I.    Entry into the United States and Release on Parole

Mr. Iza is an Ecuadorian national. (Decl. of Mincheol So ("So Decl"), ECF No. 7-1 ¶ 3.) According to the Petition, he fled his native country due to threats to his life. (Pet. at 4.) Mr. Iza entered the United States on or around December 6, 2022, near El Paso, Texas. (Pet. at 2, 13; So Decl ¶ 3.) According to ICE Deportation Officer Mincheol So, a Border Patrol Agent ("BPA") with United States Boder Patrol ("USBP"), which is a subdivision of Customs and Border Protection ("CBP"), encountered Mr. Iza near El Paso, determined that he had unlawfully entered the United States from Mexico, and arrested and transported him to a nearby Border Patrol facility for processing. (So Decl ¶ 3.) So further attests that Mr. Iza was released on parole as an alternative to detention by the issuance of a Form I-94. (*Id*.) So's Declaration is silent

5

regarding the length and nature of Mr. Iza's parole (*id*.), but the Petition states that Mr. Iza's parole was in effect until February 7, 2023. (Pet. at 2.)

The record contains a DHS Form I-213 Record of Deportable/Inadmissible Alien signed by Border Patrol Agent Carlos Padilla and Examining Officer John C. Murray, which indicates that Mr. Iza was released on parole on December 7, 2022 at "1227." (Form I-213 ("Form I-213"), ECF No. 7-4 at 1.) The narrative section of the form indicates that Mr. Iza was "released with I-94 as an alternative to detention as a condition of parole . . . due to detention capacity at Central Processing Center in El Paso, TX." (*Id*. at 2). According to the Form I-213, "[t]he facts of the case were explained to the subject by BPA Carlos Padilla." (*Id*.)

The top of the Form I-94 provided by Respondents is titled "Departure Record," below which there is a DHS stamp containing handwritten text that includes the date "feb. 07, 2023" and "212(d)(5)," as well as additional illegible handwriting. (Form I-94 ("Form I-94"), ECF No. 7-2 at 1.) Under the "Departure Record" heading, are the sub-headers "Port," "Date," and "Manner." (*Id*.) Neither the So Declaration nor any of Respondents' filings address the references to February 7, 2023 and "212(d)(5)" on the Form I-94. These markings appear to refer to the fact that Mr. Iza's release on humanitarian parole pursuant to Section 1182(d)(5)(A) was in effect through February 7, 2023. This reading is supported by the Petition, which states that Mr. Iza "was paroled into the United States until February 7, 2023." (Pet. at 2.)

The record also contains two forms that appear to have been created by ICE, but were not provided to Mr. Iza. The first is an ICE Form I-385, Alien Booking Record. (Form I-385 ("Form I-385"), ECF No. 7-5).) So fails to address when or who at DHS or ICE created this record and how it was used. (*See* So Decl.) The record includes Mr. Iza's name and File Number (corresponding to Mr. Iza's Alien Registration Number ("A-Number")) and lists his date of

apprehension as December 6, 2022, but is otherwise undated. (*Id*.) On the face of the form is the

statement: "Report to an ICE office within 60 days or face removal." (*Id*.) The second form is an

ICE Form G-56/PD dated December 7, 2022, which includes Mr. Iza's name, A-Number, and an

address in the Bronx, New York, which is presumably the address to which Mr. Iza was released

on parole. (Form G-56/PD ("Form PD G-56), ECF No. 7-6; *see also* Form I-213 (listing the

same address as associated with Mr. Iza's "US POC").) The Form PD G-56 references an

attachment of ICE Field Office locations and indicates that Mr. Iza must report to a local ICE

office within 60 days of release. (Form PD G-56.) It contains the following statement:

> You have been released in the discretion of U.S. Customs and Border Protection in the
> United States and are now required to contact your local ICE Field Office to complete
> processing.
>
> Contacting ICE will ensure that DHS has your address and contact information up to
> date. Once you contact ICE for the first time, ICE will evaluate how you can meet the
> continuing filing requirements which may include in-person reporting. Failure to contact
> the local ICE office may lead to you being taken into custody or placed on additional
> forms of supervision or monitoring.

(*Id*.) The Form PD G-56 further provides that failure to contact the local ICE office may result in

arrest and/or loss of the right to possible relief. (*Id*.)

No information in the record, whether the face of each document, the So Declaration, or

any of Respondents' letter briefs show that either the Form I-385 or Form PD G-56 were

provided to Mr. Iza. Neither document bears his signature in English or Spanish. The So

Declaration does not address either document or explain when they were created or whether or

when they were provided to Mr. Iza, whether in English or Spanish. (*See* So Decl.) Nor do

Respondents' letter briefs represent that the Form I-385 and Form PD G-56 were actually

provided to Mr. Iza. (*See* ECF No. 4 ("Dec. 17 Letter"), Resp. to Order to Show Cause, ECF

No. 6 ("Dec. 19 Letter"), Supp. Letter, ECF No. 7 ("Dec. 22 Letter.").) Counsel for Respondents

asserted during the TRO hearing that Mr. Iza was issued a Form G-56 Notice to Appear when he was released from custody, but noted that Respondents could not confirm whether Mr. Iza checked in with ICE within 60-days. (*Id* at 9:15–17.) Ms. Iza, when asked if she knew whether Mr. Iza had checked in with ICE within 60-days of his release reported that he did check in. (*Id.* at 9:18–10:23.)[3]

At the hearing, the Court ordered Respondents to file any additional supplemental information in support of their asserted bases for detaining Mr. Iza by December 29, 2025—one additional week. (Elec. Order, Dec. 22, 2025.) However, Respondents indicated they would not file any additional evidence or make any further legal arguments (ECF No. 13), thereby failing to provide factual submissions showing that the Form I-385 and Form PD G-56 were not simply internal agency records but were actually provided to Mr. Iza, that he was aware of any 60-day deadline to check in with ICE following his release pursuant to Section 1182(d)(5)(A), or that he failed to check-in with ICE at any time. Accordingly, the record does not establish that Mr. Iza was required to check in with ICE within 60 days of his release on parole on December 7, 2022, that Mr. Iza failed to comply with any requirements to check-in with ICE at any time after his release on parole, or that Respondents' relied upon any such failure to arrest and detain Mr. Iza on December 14, 2025.[4]

---

[3] Respondents' supplemental response to the Petition, which was provided only *after* the Court required Respondents to supplement their three-page response to the Petition, provided a short letter accompanying the So Declaration and attached documents, including the Form I-385 and Form PD G-56. (*See* Dec. 22 Letter.) The So Declaration does not address the Form I-385 or Form PD G-56 in any way, although it does address the other attachments to Respondents' December 22, 2025 Letter. The December 22, 2025 Letter provides no information about either document other than listing them as attachments. (*Id*.)

[4] To the extent that Respondents' counsel sought to argue that Mr. Iza failed to appear at any ICE check-ins and that such failure supports ICE's detention of him in 2025, Respondents fail to

8

## II.    Asylum Application and Work Authorization

Following his release on parole, Mr. Iza kept his address current with USCIS. (Pet. at 2.) On November 20, 2023, Mr. Iza—then living in New York—filed an application for asylum, withholding of removal, and relief under the Convention Against Torture. (*Id*. at 2, 22.) The first page of the I-589 application for asylum and withholding of removal is attached to the Petition and shows that Mr. Iza provided his A-Number and mailing address in Jamaica, New York. (*Id*. at 22.) Mr. Iza also applied for work authorization, and USCIS issued him a Form I-765 Employment Authorization Document, which authorizes him to work in the United States from June 25, 2024 through June 26, 2029. (Dec. 23 Filing at 3; *see also* ECF No. 11, Dec. 22, 2025 Hr'g Tr. ("TRO Hearing") at 15:6–23 (testimony by Mr. Iza's employer that Mr. Iza is authorized to work in the United States).)

Prior to his December 14, 2025 arrest and detention, Mr. Iza's only appointment with any division of DHS was a USCIS appointment scheduled for March 26, 2029. (*Id*. at 2, 22; ECF No. 10 at 1). Mr. Iza had not been served with a Notice of Removal or provided a date in immigration court at any time prior to his arrest. (Pet. at 2 ("[Mr. Iza] was not issued a notice to appear in court [upon being paroled into the United States]" and "had no scheduled court dates."); So Decl. ¶¶ 5, 7 (stating that on December 16, 2025 Mr. Iza was served with a Notice to Appear in Immigration Court on January 2, 2026).)

---

substantiate this assertion with factual submissions or legal argument. *See In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023) (recognizing that where a party refers to an issue in only "a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be deemed waived[]—or, more precisely, *forfeited*").

### III.    ICE Arrest and Detention

On the morning of December 14, 2025, ICE agents detained Mr. Iza in or near the parking lot of the Home Depot located at 92-30 168th Street, Jamaica, New York ("Home Depot"). (Pet. at 1; So Decl. ¶ 4) ICE transported him to the Central Islip Processing Center in Central Islip, New York, where he was served with a Form I-200, Warrant for Arrest. (So Decl. ¶ 4.) Later that day, ICE transported Mr. Iza to the Nassau County Correctional Facility. (*Id*. ¶ 6.)

On December 16, 2025, ICE served Mr. Iza with a Notice to Appear ("NTA"), Form I-862, and charged him as inadmissible pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without parole or a noncitizen who arrived in the United States at a place or time other than as designated by the Attorney General. (*Id*. ¶ 5.) The NTA further ordered Mr. Iza to appear in Immigration Court on January 2, 2026. (*Id*.; Notice to Exec. Office of Immigration Review, Form I-830 ("Form I-830") at ECF No. 7-2.) According to So, the NTA was filed with the Executive Office for Immigration Review ("EOIR") on December 18, 2025, which commenced removal proceedings against Mr. Iza under 8 U.S.C. § 1229a. (So Decl. ¶ 7.)

On December 17, 2025, ICE transferred Mr. Iza from the Nassau County Correctional Center to a "hold room" in 26 Federal Plaza, New York, New York, before subsequently transferring him to the ICE Contract Detention Facility in Elizabeth, New Jersey, later that day. (So Decl. ¶ 6.)

On December 22, 2025, the Court held a teleconference with the Parties. (Elec. Order, Dec. 22, 2025.) After hearing from both sides, it granted the TRO Motion for the reasons explained on the record and a written TRO Order. (*See* TRO Order.) Later that day, ICE released Mr. Iza from the ICE Contract Detention Facility in Elizabeth, New Jersey. (ECF No. 9.)

## PROCEDURAL HISTORY

On December 16, 2025, Ms. Iza filed the Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241, as Mr. Iza's next friend. (ECF No. 1.) The Petition claims that ICE's detention of Mr. Iza, which commenced on December 14, 2025, violates his Fifth Amendment rights to procedural due process and substantive due process and his rights under the Administrative Procedure Act and Immigration and Nationality Act. (*Id*. at 1–3, 7.) The Petition clams that the detention violated due process because ICE detained Mr. Iza without any "notice, an opportunity to respond, or an individualized determination that he posed a flight risk or danger to the community" and because Respondents denied Mr. Iza the ability to contact counsel. (*Id*. at 2)

Shortly after the Petition was filed on December 16, 2025, the Court issued an Order to Show Cause requiring Respondents to demonstrate why the Petition should not be granted. (ECF No. 3.) The Order to Show Cause further ordered that Mr. Iza should not be removed from the United States or from the Eastern District of New York, the Southern District of New York, or the District of New Jersey absent further orders of this Court. (*Id*.)

The Court also issued a separate Order requiring Respondents to address where Mr. Iza was being detained and to confirm that he had not been transferred out of this Court's jurisdiction in violation of the Order to Show Cause. (Elec. Order, Dec. 16, 2025.) On December 17, 2025, Respondents filed a letter confirming that, as of the date and time of that submission, Respondents were detaining Mr. Iza in the Nassau County Correctional Center in East Meadow, New York. (Dec. 17 Letter.)

On December 19, 2025, Respondents filed a Response to the Court's Order to Show Cause (Dec. 19 Letter), reporting that, on December 17, 2025, Mr. Iza was transferred to a hold room at 26 Federal Plaza, New York, New York, and then subsequently transferred to an ICE

facility in Elizabeth, New Jersey. (*Id*.) In the December 19, 2025 letter, Respondents explained that they submitted the letter:

> in lieu of a formal responsive memorandum to conserve judicial and party resources and to expedite the Court's consideration of this case, in light of the Court's decision on the principal legal issues in *Rodriguez-Acurio v. Almodova*, No. 25-cv-6065, 2025 WL 3314430 (E.D.N.Y., Nov.28, 2025).

*Id*. Respondents "acknowledge[d] that the Court's decision [in *Rodriguez-Acurio*] would control the results in this case" because the facts concerning the detention of Ms. Rodriguez-Acurio and Mr. Iza are "materially indistinguishable." (*Id*. at 2.) Respondents "incorporate[d] by reference the legal arguments [they] presented in *Rodriguez-Acurio* and respectfully submit[ted] that the Court can decide this matter without further briefing." (*Id*.)

On December 20, 2025, the Court issued an Order noting that the Response to the Order to Show Cause failed to identify the specific statutory basis for Mr. Iza's detention, whether Section 1225(b)(1), Section 1225(b)(2), 8 U.S.C. § 1226(c), and/or some other Immigration and Nationality Act provision. (Elec. Order, Dec. 20, 2025.) The Court further noted that the Response failed to confirm that all documents material to Respondents' asserted statutory basis for detaining Mr. Iza had been provided in the December 19, 2025 submission. (*Id*.) In light of the time sensitivity expressed in the Petition, the Court ordered Respondents to file a supplemental submission by December 22, 2025 at 11:00 am identifying the specific Immigration and Nationality Act provisions invoked as the basis for Mr. Iza's detention and all documents demonstrating why such a statutory basis applies to Mr. Iza, including any DHS and USCIS records. (*Id*.)

On December 22, 2025, Respondents filed a letter stating that Mr. Iza was being detained pursuant to Section 1225(b)(2) (Dec. 22 Letter), along with the following supporting submissions:

(1) the declaration from ICE Deportation Officer Mincheol So, dated December 19, 2025 (ECF No. 7-1, Exhibit A);

(2) a Form I-94 Departure Record relating to Mr. Iza, listing December 7, 2022 as the "Date of Action" (ECF No. 7-2, Exhibit B);

(3) a Form I-830 Notice to the Executive Office of Immigration Review, dated December 16, 2025 (ECF No. 7-3, Exhibit C);

(4) a Form I-213 Record of Deportable/Inadmissible Alien relating to Mr. Iza, dated December 7, 2022 (ECF No. 7-4, Exhibit D);

(5) a Form I-385 Alien Booking Record relating to Mr. Iza, listing December 6, 2022 as the date Mr. Iza was apprehended (ECF No. 7-5, Exhibit E); and

(6) a Form PD G-56 Notice to Appear relating to Mr. Iza, dated December 7, 2022 (ECF No. 7-6, Exhibit F).

The Court held a TRO hearing on December 22, 2025 with counsel for Respondents and Ms. Iza appearing pro se. (Elec. Order, Dec. 22, 2025.) Without objection from Respondents, Mr. Iza's employer, Jorge Brito, served as a Spanish language interpreter for Ms. Iza during the hearing. (Elec. Order, Dec. 22, 2025.) The Court heard from the parties and, for the reasons stated on the record, granted the TRO Motion, ordering ICE to immediately release Mr. Iza from detention and prohibiting ICE from re-detaining him under Section 1225(b)(2) until expiration of the TRO Order in fourteen days on January 5, 2026, pursuant to Fed. R. Civ. P. 65. The Court further ordered the parties to file any additional documents or legal arguments in support of their respective positions on the Petition by December 29, 2025 at 5:00 pm. (TRO Hearing at 13:1–6.)

On December 23, 2025, Ms. Iza filed two documents: (1) a scanned copy of a USCIS Form I-765 Employment Authorization Document issued to Mr. Iza on or around June 25, 2024, which authorizes him to work in the United States until June 24, 2029, and (2) a document that confirms an ICE appointment scheduled for March 26, 2029, but which does not include a name

or any other information identifying the individual whom the appointment concerns. (ECF No. 10.)

Notwithstanding the brevity of Respondents' prior submissions, on December 29, 2025, Respondents filed a letter informing the Court: "Respondents do not intend to submit any additional documents or arguments in this matter." (ECF No. 13, "Dec. 29 Letter".) Respondents did not attach any factual submissions, such as a declaration from a DHS or ICE official explaining the Form I-385 Alien Booking Record or Form PD G-56 Notice to Appear, that had been attached to Respondents' December 22, 2025 submission but not addressed by their letter briefs or the So Declaration.

## LEGAL STANDARD

The Petition for a writ of habeas corpus is filed under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 241(c)); *see also Hechavarria v. Sessions*, 891 F.3d 49, 53 (2d Cir. 2018).[5] Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention. *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020); *see also Hechavarria*, 891 F.3d at 53 ("[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."). Additionally, "[c]laims that the discretionary process [used to detain someone] . . . was constitutionally flawed are cognizable in

---

[5] Unless otherwise indicated, case quotations omit all internal quotation marks, brackets, alterations, and citations.

federal court on habeas because they fit comfortably within the scope of § 2241." *Velasco Lopez*, 978 F.3d at 850.

## DISCUSSION

### I.    Next Friend Standing

A petition for a writ of habeas corpus must be in writing and "signed and verified by the person for whose relief it is intended or by someone acting in [her] behalf." 28 U.S.C. § 2242. A person acting on behalf of the person for whom the habeas petition is filed is known as a "next friend." *See Whitmore v. Arkansas*, 495 U.S. 149, 161 (1990). "A 'next friend' does not himself become a party to the habeas corpus action in which he participates, but simply pursues the cause on behalf of the detained person, who remains the real party in interest." *Id.* at 163. There are two prerequisites for next friend standing: (1) the next friend "must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action"; and (2) the next friend "must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate" and must "have some significant relationship with the real party in interest." *Id*. at 163–64.

Here, Ms. Iza filed the Petition as next friend to her son, Mr. Iza, who was detained by ICE without notice or opportunity to be heard on December 14, 2025. The Petition explains that Mr. Iza could not file the Petition himself because, while detained by ICE, he "was not provided an opportunity to call counsel or provided with information on relief available or challenges he could make to these Procedural Due Process Violations." (Pet. ¶ 12.) Further, Mr. Iza "was not provided with access to a law library or any means that would allow him to prepare even a Pro se habeas corpus." (*Id*.) Additionally, "given strict limitations on call time," Mr. Iza was not "allowed to call any nonprofit nor have any opportunity to seek representation" in order to file

the emergency habeas petition. (*Id.* at ¶ 14.) Further, while Ms. Iza was filing this petition, Mr. Iza was in the process of being transferred from facility to facility. (*See* Dec. 19 Letter at 2 (stating that on December 14, 2025, Mr. Iza was transported to Central Islip, New York, and then later transferred to Nassau County Correctional Facility that same day).) Mr. Iza did not have access to counsel or the ability to prepare a pro se habeas petition while detained in the Nassau County Correctional Facility from December 14, 2025 through December 17, 2025. Accordingly, Ms. Iza has sufficiently demonstrated that the courts were inaccessible to Mr. Iza at the time she filed this emergency Petition on his behalf.[6]

Further, Ms. Iza has shown that she has a significant relationship with Mr. Iza as his mother.[7] She has also demonstrated dedication to his best interests, including by appearing before the Court at a TRO hearing on short notice and by timely filing additional documentation in response to the Court's Order. (*See* Elec. Order Dec. 22, 2025 (setting a telephone TRO hearing for later that day); TRO Hearing at 13:1–6; ECF No. 10.) Accordingly, the Court considers the Petition filed by Ms. Iza on behalf of Mr. Iza, who "remains the real party in

---

[6] Although Mr. Iza is not currently detained, his release on December 22, 2025 was solely pursuant to the TRO Order, which is set to expire today (January 5, 2026). Accordingly, the Petition is not moot and the Court must address the merits of the Petition, which challenges Respondents' assertion that they may detain Mr. Iza without a pre-deprivation determination by a DHS officer or immigration judge that Mr. Iza presents a public safety or flight risk. *See J-C-R-M v. Wamsley*, No. 3:25-cv-990, 2025 WL 3527108, at *4 (D. Or. Dec. 9, 2025) (holding that because petitioner "was confined at the time he filed his Petition and is seeking release based on alleged unlawful confinement," the court still rules on the habeas petition even though the petitioner is no longer confined because unlawful confinement goes to the "core" of habeas). Notably, Respondents do not represent that they will refrain from again seeking to arrest and detain Mr. Iza pursuant to Section 1225(b)(2) without ensuring that he is first provided such notice and process.

[7] Ms. Iza provided a signed declaration in which she attested that she is Mr. Iza's mother (Pet. at 11) and attached a copy of Mr. Iza's birth certificate, which lists Ms. Iza as his mother. (Pet. at 13.)

interest." *Whitmore*, 495 U.S. at 163; *see also Padilla v. Rumsfeld*, 352 F.3d 695, 703 (2d Cir. 2003) (holding that the detained person is the "real party in interest" in a habeas petition filed by a next friend), *rev'd and remanded on other grounds*, 542 U.S. 426 (2004).

## II.    Statutory Framework

The Court incorporates by reference the entirety of Discussion Section I of its Opinion and Order in *Rodriguez-Acurio v. Almodovar*, in which this Court explains the statutory framework for removing noncitizens from the United States through removal and expedited removal proceedings, ICE's mandatory and discretionary detention of noncitizens under the INA, and the release of applicants for admission detained under 8 U.S.C. § 1225(b)(1) or (b)(2) "temporarily . . . on parole for urgent humanitarian reasons or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5)(A), which is known as the humanitarian parole statute ("Section 1182(d)(5)(A)"). *See Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 2:25-cv-6065, 2025 WL 3314420, at *8–11 (E.D.N.Y. Nov. 28, 2025).

## III.    Analysis

 The Petition seeks an order requiring "Respondents to release Petitioner on his own recognizance or under parole, a low bond or reasonable conditions of supervision." (Pet. at 8.) It claims that Respondents violated Mr. Iza's procedural and substantive due process rights under the Fifth Amendment and his rights under the APA and INA by detaining him starting on December 14, 2025 without any pre-deprivation "notice, an opportunity to respond, or an individualized determination that he posed a flight risk or danger to the community. . . ." (Pet. at 2, 7–8.)

As noted, Respondents take the position that "the Court's decision [in *Rodriguez-Acurio*] would control the results in this case" because the facts concerning the detention of Rodriguez-

Acurio and Mr. Iza are "materially indistinguishable." (Dec. 19 Letter at 2.) Respondents do not make *any* arguments or address any facts particular to Mr. Iza. Instead, Respondents "incorporate by reference the legal arguments [they] presented in *Rodriguez-Acurio* and respectfully submit that the Court can decide this matter without further briefing." (*Id.*) In response to this Court's order directing Respondents to specify the statutory basis for Mr. Iza's detention, Respondents filed a December 22, 2025 letter in which they invoke only Section 1225(b)(2) as the basis for Mr. Iza's detention, rather than Section 1225(b)(1), Section 1226(c), or any other INA provision. (Dec. 22 Letter.)

Moreover, although the record indicates that Mr. Iza was paroled into the interior of the United States on December 7, 2025, none of Respondents' submissions address the specific statutory basis for parole, such as whether Mr. Iza was released on humanitarian parole under Section 1182(d)(5)(A) or a different form of parole. Nor do they address whether Mr. Iza was instructed to check in with ICE 60 days after his release on parole, such as through provision of the Form I-385 Alien Booking Record (ECF No. 7-5) or the Form PD G-56 Notice to Appear (ECF No. 7-6). Nor do Respondents provide any factual submissions showing that Mr. Iza failed to appear at any required ICE check ins at any time following his release on parole. Indeed, Respondents' December 29, 2025 response to the Court's invitation for supplemental briefing and factual submissions indicates that Respondents do not find it material to address any of these factual or legal issues, thus conveying that they rest on their position that Mr. Iza's detention is authorized by Section 1225(b)(2) and that his facts are "materially indistinguishable" from those of Ms. Rodriguez-Acurio. (*See* Dec. 29 Letter at 1 ("Respondents do not intend to submit any additional documents or arguments in this matter.").) The Court thus considers the arguments Respondents' set forth in *Rodriguez-Acurio* in support of the invocation of mandatory detention

pursuant to Section 1225(b)(2). *See Rodriguez-Acurio*, 2025 WL 3314420 at *12; (Dec. 22 Letter).

In *Rodriguez-Acurio*, Respondents made three arguments relating to mandatory detention under Section 1225(b)(2), which the Court considers as having been made with respect to Mr. Iza as well. First, they argue that Mr. Iza's detention is governed by the mandatory detention provision set forth in Section 1225(b)(2), not the Section 1226(a) discretionary detention framework. *Id*. Second, they contend that courts apply an "entry fiction" to claims by noncitizens whereby the only procedural due process rights that noncitizens like Mr. Iza possess are those that Congress has provided by statute. *Id.* And finally, Respondents argue that even if the Court were to find that Respondents' detention of Mr. Iza violated his rights under the Fifth Amendment Due Process Clause and Section 1226(a), the proper remedy is to require a bond hearing before a DHS officer with the option of appeal to an immigration judge, as opposed to release. *Id*.

For the reasons explained below, Section 1225(b)(2) does not apply to Respondents' detention of Mr. Iza between December 14 and 22, 2025, for the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference in this Opinion and Order. *See Rodriguez-Acurio*, 2025 WL 3314420 at *22–25. Accordingly, Respondents' detention of Mr. Iza was necessarily carried out pursuant to the Section 1226(a) discretionary detention framework.

Contrary to Respondents' contentions, Mr. Iza—as a noncitizen who was paroled into the interior of the United States, has continuously resided in New York for more than three years, has developed deep community ties, and was granted five years of work authorization from 2024 to 2029—has a liberty interest in being free from detention that is absent any procedural due process protections. The Court therefore applies the balancing test laid out in *Mathews v.*

*Eldridge*, 424 U.S. 319, 335 (1976), as it did in *Rodriguez-Acurio*, and concludes that

Respondents' detention of Mr. Iza without any pre-deprivation notice and opportunity to be

heard, much less any individualized determination by a DHS officer or immigration judge as to

whether detention is appropriate based on public safety concerns or flight risk, violates his Fifth

Amendment rights. This Court therefore incorporates by reference the procedural due process

analysis set forth in *Rodriguez-Acurio*, 2025 WL 3314420 at *25–31. Accordingly, and in

consideration of Mr. Iza's weighty liberty interests alongside Respondents' interests in enforcing

immigration laws and the substantial risk of erroneous deprivation stemming from Respondents'

arrest and detention of Mr. Iza without any notice or opportunity to be heard, Mr. Iza's detention

violated his right to procedural due process.

Finally, despite Respondents' contentions that the proper remedy for such a violation is to

require a bond hearing before a DHS officer with the option of appeal to an immigration judge,

such a relief would be futile for the reasons set forth in *Rodriguez-Acurio*, which are also

incorporated by reference herein. 2025 WL 3314420 at *31–33. Disposing of the matter as law

and justice require necessitates Mr. Iza's release from detention and relief guarding against his

re-detention in violation of this Court's determination that he is not subject to mandatory

detention under Section 1225(b).

## A. Mr. Iza was not Detained Under Section 1225(b)

Section 1225(b)(2) provides that:

> in the case of an alien who is an **applicant for admission**, if the examining
> immigration officer determines that an **alien seeking admission** is **not clearly
> and beyond a doubt entitled to be admitted**, the alien shall be detained for a
> proceeding under section 1229a.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). As this Court previously set out in *Rodriguez-

Acurio*, according to its plain text, to be subject to mandatory detention under this statute, a

noncitizen must be: (1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted. 2025 WL 3314420, at *22. There is no dispute that Mr. Iza is an "applicant for admission" and he is "not clearly and beyond a doubt entitled to be admitted" as set forth in Section 1225(b).

In *Rodriguez-Acurio*, Respondents argued that because the petitioner in that case was an "applicant for admission," she was also inherently and necessarily "seeking admission" to the United States and thereby satisfied all three criteria required for mandatory detention under 1225(b)(2). 2025 WL 3314420, at *22–23. In light of Respondents' December 19, 2025 letter, Respondents adopt precisely the same argument with respect to Mr. Iza. (Dec. 19 Letter at 2.) However, based on the record before the Court, Mr. Iza is not detained under 8 U.S.C. § 1225(b)(2) for the reasons set out in *Rodriguez-Acurio*, 2025 WL 3314420, at *22–24.

Mr. Iza is not "seeking admission" because he has been living in the United States since December 2022. "Indeed, it would be illogical to find that [Mr. Iza] is still in the process of 'arriving' in the United States when [he] has been continuously residing in the United States for more than three years" and, as recently as June 2024, USCIS granted him authorization to work in the United States for five years. *Id*. at *21; *see also* (Dec. 23 Filing at 3; ECF No. 11, TRO Hearing at 15:6–23 (Mr. Iza's employer confirming that Mr. Iza has work authorization)). Like Ms. Rodriguez-Acurio, Mr. Iza is an applicant for admission, but clearly he is not presenting himself at the border and was not recently apprehended just after entering, and thereby is not "seeking admission" as required for mandatory detention under Section 1225(b)(2). Moreover, while Mr. Iza's application for asylum and withholding of removal may indicate that he continues to "'seek something,' what he seeks is not 'admission' or 'lawful entry' to the United States, but to obtain a lawful means to *remain* here" where he has been continuously residing for

21

more than three years. *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488 n.7 (S.D.N.Y. 2025) (emphasis in original).

Respondents do not identify any active process of seeking admission attributable to Mr. Iza. (*See generally* Dec. 17 Letter; Dec. 19 Letter; Dec. 22 Letter; Dec. 29 Letter.) Respondents note that they "respectfully disagree[] with the Court's decision in *Rodriguez-Acurio*" but do not advance any additional arguments other than what they previously set forth in *Rodriguez-Acurio*. (Dec. 19 Letter at 2.) Respondents' arguments are unpersuasive for the reasons already set forth in *Rodriguez-Acurio*. As this Court has explained, an "overwhelming, lopsided majority" of district courts have rejected Respondents' arguments concerning Section 1225(b)(2). 2025 WL 3314420, at *23 (quoting *Barco Mercado v. Francis*, No. 25-cv-6582, __ F. Supp. 3d __, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025)). Indeed, at the time *Rodriguez-Acurio* was decided, Respondents' position that all noncitizens who have come into the United States without authorization, but have been living in the United States must be detained "ha[d] been challenged in at least 362 cases in federal district courts," and the challengers "ha[d] prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States." *Rodriguez-Acurio*, 2025 WL 3314420, at *23 (quoting *Barco Mercado v. Francis*, 2025 WL 3295903, at *4, which was decided two days before *Rodriguez-Acurio*). Such decisions are not binding, and the Court has independently considered Respondents' arguments with respect to Mr. Iza. Nonetheless, the overwhelming caselaw from across this Circuit and, indeed, the country, reflects the novelty of Respondents' arguments and demonstrates "that the law still means what it always has meant." *Rodriguez-Acurio*, 2025 WL 3314420, at *23.

Accordingly, Mr. Iza was detained by ICE while present in the United States but not while actively seeking admission into the country. Therefore, Respondents' detention of him from December 14, 2025 through December 22, 2025, was not carried out pursuant to Section 1225(b)(2).

Respondents do not address the import, if any, of Mr. Iza's release on humanitarian parole under Section 1182(d)(5)(A) or the apparent expiration of that parole in February 2023 as set forth in the Form I-94 and Petition on the statutory basis for Mr. Iza's detention. (*See* Form I-94; Pet. at 2.) For example, Respondents do not argue that the expiration of humanitarian parole is material to the question of whether Section 1225(b)(2) applies to Mr. Iza. Indeed, in *Rodriguez-Acurio*, Respondents argued that the expiration of humanitarian parole subjected the petitioner in that case to mandatory detention under Section 1225(b)(1)—a provision Respondents explicitly decline to invoke here.

The Court nevertheless incorporates by reference the analysis set forth in *Rodriguez-Acurio* concerning the inapplicability of Section 1225(b)(1) to noncitizens like Mr. Iza, who are released from ICE detention and permitted to move to the interior of the United States pursuant to the humanitarian parole provision in Section 118d(2)(5)(A). Respondents concede that Mr. Iza was released on parole shortly after his entry to the United States as shown by the Form I-213, Form PD G-56, and Form I-385, even though they do not identify the statutory basis for such release on parole. The Form I-94 indicates that Mr. Iza's release on parole was pursuant to Section 1182(d)(5)(A) based on the handwritten notation "212(d)(5)," which presumably refers to INA Section 212(d)(5)(A), which is 8 U.S.C. § 1182(d)(5)(A). Here, Mr. Iza was never served with a notice of expedited removal and Respondents do not rebut the Petition's express statement that he was not subject to such proceedings. (Pet. at 2 ("He has been in the United States for

more than 2 years and is not subject to expedited removal proceedings.").) For all of the reasons

explained in *Rodriguez-Acurio*, Section 1225(b)(1) cannot be the basis for Mr. Iza's detention

because neither the Arriving Aliens Provision nor the Designation Provision of Section

1225(b)(1) authorizes the expedited removal and the detention of noncitizens who, like Mr. Iza,

were paroled into the United States under Section 1182(d)(5)(A). *Rodriguez-Acurio*, 2025 WL

3314420, at *14–22. As is the case with Rodriguez-Acurio:

> Section 1182(d)(5)(A) may permit [Mr. Iza] to be returned to ICE custody, but [his] case,
> which necessarily includes the procedures required before detention, 'shall continue to be
> dealt with in the same manner as that of any other applicant for admission,' 8 U.S.C.
> § 1182(d)(5)(A), and any other applicant for admission residing in the United States for
> more than three years would be detained under Section 1226.

*Id*. at 18; *see also Qasemi v. Francis*, No. 25-cv-10029, 2025 WL 3654098, at *7 (S.D.N.Y. Dec.

17, 2025) (agreeing with the reasoning of *Rodriguez-Acurio* and holding that the text of Section

1225(b)(1) "exempts noncitizens who are both presently on parole and those who were paroled

in the past"); *O.F.B. v. Maldonado*, No. 25-cv-6336, 2025 WL 3277677, at *5 (E.D.N.Y. Nov.

25, 2025) (holding that "Section 1225 does not apply to a noncitizen like Petitioner [whose

parole has expired but], who has been living in the United States for years, and that his detention

can only be authorized if it came about as a result of procedures compliant with 8 U.S.C.

§ 1226(a).").[8]

---

[8] As noted above, the Court makes the factual finding that the record does not show that Mr. Iza
failed to check in with ICE, whether 60 days after his release on parole or at any time thereafter,
or that any such failure was the basis for Respondents' arrest and detention of Mr. Iza on
December 14, 2025. (*See supra* Factual Findings § I at 5–8.) Respondents were given the
opportunity to provide additional arguments and documentation but did not do so. (*See* Dec. 29
Letter.) Moreover, Respondents do not argue that any failure by Mr. Iza to check in with ICE is
material to their argument that he is detained under Section 1225(b) rather than Section 1226(a).
*See United States v. Graham*, 51 F.4th 67, 80 (2d Cir. 2022). Indeed, Respondents entirely rely
on their arguments in *Rodriguez-Acurio*, where Respondents made no such arguments.

**B. Mr. Iza was Detained Under Section 1226(a)**

As explained in *Rodriguez-Acurio*, Sections 1225 and 1226 are "mutually exclusive—a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226." 2025 WL 3314420, at *24. Because Respondents' arguments involving Section 1225(b)(2) are unpersuasive, Mr. Iza's detention was governed by Section 1226(a). Further supporting this conclusion is the fact that Mr. Iza was arrested on a DHS Warrant for Arrest that was issued pursuant to Section 1226(a). (Form I-200, Warrant for Arrest ("Warrant"), ECF No. 6-1.) The face of the Warrant authorizes an immigration officer to serve the Warrant "pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of the title 8, Code of Federal Regulations . . . ." *Id.*; *see Rodriguez-Acurio*, 2025 WL 3314420, at *24 (finding that Sections 236 and 287 of the Immigration and National Act and part 287 of title 8 of the Code of Federal Regulations correspond to 8 U.S.C. §§ 1226, 1357 and 8 C.F.R. 287.1– 287.12.); *see also Lopez Benitez*, 795 F. Supp. 3d at 485 (finding that Petitioner's Notice of Custody Determination and warrants for arrest, all pursuant to 1226, "unequivocally establish[ed]" that he was detained pursuant to Section 1226(a)). Although not dispositive standing alone, Mr. Iza's arrest on a warrant invoking Section 1226 supports the conclusion that his detention is governed by Section 1226(a)'s discretionary detention framework. *See Sampiao v. Hyde*, No. 25-cv-11981, 2025 WL 2607924, at *1 (D. Mass. Sept. 9, 2025) (holding that to mandate the petitioner's detention "in these circumstances would contravene Congress's intent that Section 1226(a)'s discretionary detention framework apply to all noncitizens arrested on a warrant except those subject to Section 1226(c)'s carve out"); *dos Santos v. Noem*, No. 25-cv-12052, 2025 WL 2370988, at *7 (D. Mass. Aug. 14, 2025) ("Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the

25

United States."); *cf. Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (holding that Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings"). Thus, based on the current record, Mr. Iza's detention was governed by Section 1226(a).

### C.  Procedural Due Process

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. When evaluating a procedural due process claim, there are "two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Radwan v. Manuel*, 55 F.4th 101, 123 (2d Cir. 2022); *see also Nnebe v. Daus*, 931 F.3d 66, 80 (2d Cir. 2019).

### I.  Mr. Iza's detention infringes on his protected liberty interest

The Petition argues that Mr. Iza's detention by ICE triggered his right to procedural due process because any decision to detain him is subject to Section 1226(a) and there is no dispute that "ICE detained him without notice, an opportunity to respond, or an individualized determination that he posed a flight risk or danger to the community." (Pet. at 2, 5.) In *Rodriguez-Acurio*, Respondents cited several cases, including *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 107 (2020), to argue that the petitioner in that case did not have a right to any additional process than what the Section 1225 mandatory detention scheme affords. *Rodriguez-Acurio*, 2025 WL 3314420, at *25. Respondents' December 19, 2025 letter incorporates by reference such arguments made in *Rodriguez-Acurio*. (Dec. 19 Letter at 2.)

As a preliminary matter, as established above, Mr. Iza was not detained from December 14, 2025 through December 22, 2025 pursuant to Section 1225(b)(2); accordingly, his detention was governed by Section 1226(a), and he was entitled to the protections afforded by that statute.

26

Section 1226(a) vests DHS with "broad authority to arrest and detain noncitizens, but due process must account for the wide discretion that Section 1226(a) vests in the Government to arrest *any* person in the United States suspected of being removable." 2025 WL 3314420, at *29 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 492) (emphasis in original).

Thus, for all of the reasons set forth in *Rodriguez-Acurio*, which are incorporated by reference here, Respondents' arguments misstate the law. *See* 2025 WL 3314420, at *25–27. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Due Process Clause "covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez*, 978 F.3d at 850; *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (noncitizen who entered the country in violation of the law cannot be "deprived of [her] liberty" without receiving "due process of law"). In habeas proceedings concerning executive detention, courts must conduct "the most searching review" to ensure the legality of detention that "occur[s] without the procedural protections required in courts of law." *Velasco Lopez*, 978 F.3d at 850–51. *Thuraissigiam* does not support Respondents' position because it "stands for the limited principle that those 'at the threshold of entry' stand on a different footing for due process purposes than noncitizens 'who have established connections in this country.'" *Rodriguez-Acurio*, 2025 WL 3314420, at *26 (quoting *Thuraissigiam*, 591 U.S. at 107).

Mr. Iza was paroled into the interior of the United States in 2022, has been living in New York since that time, has developed significant community ties, and was granted authorization to work in the United States from 2024 to 2029. Therefore, the cases cited by Respondents in *Rodriguez-Acurio*, including *Thuraissigiam*, are distinguishable. Mr. Iza therefore has a liberty

27

interest in being free from detention that is afforded procedural due process protection. *See Velasco Lopez*, 978 F.3d at 850 (confirming that the Fifth Amendment "covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent"). That liberty interest was necessarily infringed when ICE detained him on December 14, 2025.

## II.    Respondents' detention of Mr. Iza violated his rights to procedural due process

Courts apply the *Mathews v. Eldridge* balancing test "when determining the adequacy of process in the context of civil immigration confinement." *Munoz Materano v. Artera*, No. 25-cv-6137, 2025 WL 2630826, at *12 (S.D.N.Y., Sept. 12, 2025). Under that test, the determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. *Mathews*, 424 U.S. at 335.

Applying that test, Respondents' detention of Mr. Iza violated his Fifth Amendment Procedural Due Process rights.

### i.  Mr. Iza's detention infringed on his liberty interest

As already established, the Petition invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851. As a result, Mr. Iza's private interest in his liberty is significant. ICE detained him without any notice, explanation, or an opportunity to be heard on December 14, 2025, after arresting him in or near the Home Depot parking lot. (Pet. at ¶¶ 11–12.) From December 14 to 17, 2025, Respondents did not afford Mr. Iza the opportunity to call counsel or access to a law library, thereby preventing him from preparing this Petition seeking a writ of habeas corpus. (*Id*. at ¶¶ 12–14, 18.) Nor was

28

Mr. Iza able to communicate with any existing or potential counsel in order to prepare for removal proceedings while detained even though Respondents served him on December 16, 2025—just two days after ICE detained him—with a Notice to Appear for an immigration court hearing on January 2, 2025. (*See* Pet. at 2; So Decl. ¶¶ 5, 7; Form I-862, ECF No. 7-3.) Further, for the duration of his detention prior to this Court's issuance of a TRO ordering his release, Mr. Iza was separated from his mother and could not work at his job as an electrician. (Pet. at 1 (demonstrating his mother's efforts to find him in the ICE inmate locator after he was suddenly arrested and detained); TRO Hearing at 15:3–10 (confirming that Mr. Iza works as an electrician and that "he will report to work if he's released.").) In addition, significant weight is afforded to Mr. Iza's interest in liberty because has been in living in the United States since 2022—more than three years. (Pet. at 2.) Accordingly, Mr. Iza has a significant private interest in being free from imprisonment while his removal proceedings are pending. (Form I-862, ECF No. 7-3).

### ii.    Risk of erroneous deprivation

There is also a high risk of erroneous deprivation through the procedures—or lack thereof—used to detain Mr. Iza. Respondents do not contest that they did not provide Mr. Iza notice and an opportunity to be heard before a DHS officer or immigration judge prior to detaining him on December 14, 2025. For the same reasons set forth fully in *Rodriguez-Acurio*, there is a high risk of erroneous deprivation of liberty in detaining Mr. Iza without any notice or opportunity to be heard. *See* 2025 WL 3314420, at *29–30. The additional procedural safeguard of requiring that any detention to be preceded by a bond hearing before an immigration judge would squarely address that risk. *See id.*; *Lopez Benitez*, 795 F. Supp. 3d at 495; *Hyppolite v. Noem*, No. 24-cv-4304, 2025 WL 2829511, at *13–14 (E.D.N.Y. Oct. 6, 2025) (finding an

"extremely high" risk of erroneous deprivation where a person is detained under Section 1226(a) without any pre-deprivation notice or an opportunity to be heard).

### iii.    Government's interest

The Attorney General may have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community. *See Velasco Lopez*, 978 F.3d at 854 (holding that "the Attorney General's discretion to detain individuals under [Section 1226(a)] is valid where it advances a legitimate governmental purpose," such as "ensuring that noncitizen[s] do not abscond and . . . ensuring they do not commit crimes."); *Lopez Benitez*, 795 F. Supp. 3d at 496. However, there is nothing in the record suggesting that Mr. Iza is a flight risk or a danger to his community. There is absolutely no evidence that Mr. Iza has been suspected, much less charged, arrested, or convicted of any crime. Moreover, Respondents fail to provide any information to even suggest that Mr. Iza failed to check in with ICE or USCIS as required. By contrast, shortly after Mr. Iza's entry into the United States on or around December 6, 2022, Respondents released Mr. Iza on Section 1182(d)(5)(A) parole, permitting him to move to the interior of the United States. Indeed, Mr. Iza's release on parole "necessarily involved the determination that [he] posed no flight or public safety risk." *Rodriguez-Acurio*, 2025 WL 3314420, at *30 (citing 8 C.F.R. § 212.5(b)); *R.I., v. Wofford*, No. 25-cv-01637, 2025 WL 3768205, at *1 (E.D. Cal. Dec. 31, 2025) ("By regulation, immigration officials may parole a noncitizen pursuant to 8 U.S.C. § 1182(d)(5)(A) for urgent humanitarian reasons or significant public benefit, provided the noncitizen presents neither a security risk nor risk of absconding . . . . Such release therefore reflects a determination that the noncitizen is not a danger to the community or a flight risk." (citing 8 C.F.R. § 212.5(b)).) Further, Respondents have not addressed any of the *Mathews v. Eldrige* factors with respect to Mr. Iza's detention.

* * *

Weighing all of the *Matthews v. Eldrige* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that his detention was required to advance any legitimate government interest in ensuring Mr. Iza's appearance at removal proceedings or preventing danger to the community—Respondents' detention of Mr. Iza with no notice or opportunity to be heard and no showing of changed circumstances following release on parole violated his procedural due process rights. *See, e.g.*, *Lopez Benitez*, 795 F. Supp. 3d at 496; *Huamani Tumba v. Francis*, No. 25-cv-6065, 2025 WL 3079014, at *9 (E.D.N.Y. Nov. 28, 2025). Any future detention on the same basis would do so as well, absent changed circumstances consistent with this Opinion and Order. Because the Court finds that Respondents' detention of Mr. Iza violated his rights to procedural due process, it declines to reach his substantive due process claims and claims under the INA and APA.

## IV.    Remedy

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008).

Here, the Petition requests that the Court issue a writ of habeas corpus ordering Respondents to release Mr. Iza on his own recognizance, or under parole, a low bond, or other reasonable conditions of supervision, and award Mr. Iza reasonable costs and attorney's fees, along with any other relief the Court deems just and proper. (Pet. at 8–9.)[9]

---

[9] The Petition also seeks an order enjoining Respondents from transferring Mr. Iza away from this Court's jurisdiction pending these proceedings and requiring Respondents to show cause as

This Court hereby incorporates by reference Section III of its opinion in *Rodriguez-Acurio*, in which this Court provides the legal basis for ordering release as well as injunctive relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting Mr. Iza to mandatory detention, absent a change in relevant circumstances. *See* 2025 WL 3314420, at *31–32. A bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue here. Mr. Iza's detention was unlawful from its inception because ICE detained him under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a). Accordingly, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates Mr. Iza's continued release from detention as well as relief guarding against re-detention in violation of this Court's determination that he is not subject to mandatory detention under Section 1225(b).

Accordingly, because Mr. Iza was already released from detention pursuant to the Court's December 22, 2025 TRO Order (ECF No. 9), pending the issuance of a final order of removal against Mr. Iza, Respondents are enjoined from denying Mr. Iza bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Opinion and Order. The Court does not rule on the request for attorney's fees and costs at this time, but notes that Ms. Iza filed the Petition pro se as next friend to Mr. Iza and that no counsel has filed a notice of appearance for Mr. Iza since his

---

to why the writ should not be granted within seven to fifteen days of the filing of the Petition. (Pet. at 8.) These two requests for relief are dismissed as moot in light of the Court's issuance of a December 16, 2025 Order requiring Respondents to show cause as to why the Petition should not be granted by December 19, 2025, and enjoining them from removing Mr. Iza from the United States or outside of the Eastern District of New York, Southern District of New York, or District of New Jersey. (ECF No. 3.)

release pursuant to the TRO on December 22, 2025. Nevertheless, Mr. Iza may file any application for attorney's fees and costs incurred in pursuing this action by February 2, 2026.

## CONCLUSION

For the reasons explained above and in this Court's prior opinion in *Rodriguez-Acurio*, 2025 WL 3314420, the Petition is GRANTED IN PART. Pending the issuance of any final removal order against Mr. Iza, Respondents are enjoined from denying him bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Opinion and Order.

At this time, the Court reserves ruling on the request for attorney's fees and costs set forth in the Petition. Mr. Iza may file an application for attorney's fees and costs incurred in pursuing this action by February 2, 2026.

Dated: Central Islip, New York
        January 5, 2026

　　　　　　　　　　　　　　　　　　　　 */s/ Nusrat J. Choudhury*　
　　　　　　　　　　　　　　　　　　　　 NUSRAT J. CHOUDHURY
　　　　　　　　　　　　　　　　　　　　 United States District Judge

33